Cynthia L. Rice (CA SBN 87630)
Disability Law United
131 Steuart Street, Suite 400
San Francisco, CA
Tel.: (303) 551-9389
Fax: (303) 551-9389

Laura Murchie
1905 Sherman Street
Suite 200, #1282
Denver, CO 80203
Tel.: (404) 912-5234

Sylvia Torres-Guillén (CA SBN 164835)
Alegría De La Cruz (CA SBN 229713)
Ashly Villa-Ortega (CA SBN 355083)
Disability Rights Law Center
700 S. Flower Street, Suite 1000
Los Angeles, CA 90017
Tel.: (213) 736-1031
Fax: (213) 736-1428

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYARTULGA AVIRMED, et al<br>                   Plaintiff-Petitioner,<br>     vs.<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY, KRISTI NOEM, in her<br>official capacity as Secretary of the DHS,<br>U.S. CITIZENSHIP AND<br>IMMIGRATION SERVICES (USCIS);<br>KIKA SCOTT, in her official capacity as<br>Senior Official Performing the Duties of<br>the Director of USCIS; CUSTOMS AND<br>BORDER PROTECTION (CBP); PETE<br>R. FLORES, in his official capacity as | Case No.: 3:25-cv-01310-DMS-DEB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>(Fed. R. Civ. Proc. 65) |

Acting Commissioner of CBP;                    )
IMMIGRATION AND CUSTOMS                         )
ENFORCEMENT (ICE); TODD                         )
LYONS, in his official capacity as             )
Acting Director of ICE; U.S.                    )
DEPARTMENT OF JUSTICE (DOJ);                    )
and PAMELA BONDI, in her official              )
capacity as Attorney General                    )
                          Defendant(s)          )

# TABLE OF CONTENTS

INTRODUCTION ...................................................................... 7

PRELIMINARY STATEMENT ................................................ 9

STATEMENT OF FACTS ....................................................... 10

    1.    Knowing that Mr. Avirmed is Deaf and Does Not Communicate Orally, Defendants Continually Fail to Reasonably Accommodate Him ........................111

    2.    Mr. Avirmed is Currently Being Denied Adequate Medical Care. ................13

    3.    Defendants' Failure to Accommodate Mr. Avirmed's Disabilities at OMDC Leaves Him Isolated and Effectively in Solitary Confinement................15

ARGUMENT ........................................................................... 16

    1.    Plaintiff Meets the Legal Standard for the Issuance of Preliminary Injunction. ..................................................................16

    2.    Plaintiff is Suffering and Will Continue to Suffer Irreparable Harm Absent a Preliminary Injunction. ..................................................18

    3.    There Is a Substantial Likelihood That Plaintiff Will Prevail on The Merits of His 504 Claim……………………………………………………..   20

    4.    There is a substantial likelihood that Plaintiff will Prevail on the Merits of his APA case..........................................................26

    5.    The Balance of Hardships Weighs in Favor of Plaintiff and the Public Interest is Served Best through the Issuance of a Preliminary Injunction. ............28

CONCLUSION ....................................................................... 30

# TABLE OF AUTHORITIES

## **Cases**

*Alcaraz v. INS,*
  384 F.3d 1150 (9th Cir. 2004) ...................................................................26, 27

*Arc of Cal. v. Douglas,*
  757 F.3d 975 (9th Cir. 2014) ...............................................................................17

*Armstrong v. Brown,*
  732 F.3d 955 (9th Cir. 2013) ..........................................................................22, 26

*Armstrong v. Wilson,*
  124 F.3d 1019 (9th Cir. 1997) .............................................................................21

*California v. Azar,*
  911 F.3d 558 (9th Cir. 2018) ...............................................................................30

*Castillo v. Barr,*
  449 F. Supp. 3d 915 (C.D. Cal. 2020) .................................................................30

*Chalk v. United States Dist. Court,*
  840 F.2d 701 (9th Cir. 1988) ...............................................................................19

*Church of Scientology of Cal. v. United States,*
  920 F.2d 1481 (9th Cir.1990) .........................................................................26. 27

*City of Los Angeles v. Lyons,*
  461 U.S. 95 (1983) .......................................................................................passim

*Cupolo v. Bay Area Rapid Transit,*
  5 F.Supp.2d 1078 (N.D.Cal. 1997).......................................................................19

*Duvall v. County of Kitsap,*
  260 F.3d 1124 (9th Cir. 2001).....................................................................22, 23, 27

*Enyart v. National Conference of Bar Examiners,*
  630 F. 3d 1153 (9th Cir. 2011) .............................................................................30

*Franco-Gonzalez v. Holder,* 767
F. Supp. 2d 1034 (C.D. Cal. 2010)...............................................................8

*Harris v. Bd. O Supervisors, L.A. Cnty.,*
366 F.3d 754 (9th Cir. 2004) ......................................................................29

*Hernandez v. County of Monterey,*
110 F. Supp. 3d 929 (N.D. Cal. 2015)..........................................................19

*Jones v. Texas Dep't of Criminal Justice,*
880 F.3d 756 (5th Cir. 2018) ......................................................................20

*Kaszuba v. Fidelity Nat'l Default Servs.,*
2011 WL 601525 (S.D. Cal. Feb. 10, 2011) (Sabraw, J.) ...........................17

*Lopez v. Heckler* (1983)
713 F.2d 1432 ..............................................................................................29

*Lujan v. Defs. of Wildlife,*
504 U.S. 555, 560–61 (1992) .........................................................................9

*Morton v. Ruiz,*
415 U.S. 199 (1974).....................................................................................26

*O'Shea v. Littleton,*
414 U.S. 488, 496 (1974) ...............................................................................9

*Rodriguez v. Robbins,*
715 F.3d 1127 (9th Cir. 2013).....................................................................29

*Sullivan v. Vallejo City Unified School Dist.,*
731 F. Supp. 947 (E.D. Cal. 1990) .............................................................19

*Updike v. Multnomah County,*
870 F.3d 939 (9th Cir. 2017).................................................21, 22, 25, 27

*Wild Rockies v. Cottrell,*
632 F.3d 1127 (9th Cir. 2011) ....................................................................17

*Winter v. Nat'l Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)......................................................................................17, 28

**Statutes**

29 U.S.C. § 794..............................................................17, 20, 23, 27
42 U.S.C. § 12133.......................................................................17
5 U.S.C. §§ 551............................................................................26
8 U.S.C. § 1158.......................................................................................
Section 504 of the Rehabilitation Act .......................................*passim*


**Regulations**

6 C.F.R. § 15.30...........................................................................23, 27
6 C.F.R. § 15.60...........................................................................23, 27

**Other Authorities**

*Matter of M.A.M.*, 25 I&N Dec. 474 (BIA 2011)............................................8

**INTRODUCTION**

Plaintiff Bayartulga Avirmed ("Plaintiff" or "Mr. Avirmed") is Deaf and cannot communicate orally. He is currently detained by Defendants at the Otay Mesa Detention Center ("OMDC") pending determination of his asylum application and is being denied the reasonable accommodations necessary for him to meaningfully participate in his immigration proceedings, to effectively communicate his medical needs, to participate in his medical care, and to communicate with his attorney and family members.

Mr. Avirmed has been and remains at risk of being forced to participate without effective communication in proceedings that will determine his eligibility for asylum, including those related to his eligibility for release and mandatory assistance of counsel due to his mental incapacity. He has also been, and continues to be, at risk of being subjected to inadequate medical treatment due to the inability to communicate with facility staff and medical providers. He has been, and continues to be, at risk of becoming isolated and suffer further depression, fear, anxiety, and exacerbation of his mental health condition due to his inability to communicate with anyone at OMDC, his counsel and family. By failing to provide interpretation assistance by a Mongolian Sign Language ("MSL") interpreter, and written interpretation, in Mongolian, of notices and other documents, Defendants have caused and will continue to cause Mr. Avirmed these harms due to their ongoing violations of his rights under Section 504 of the Rehabilitation Act and the Administrative Procedure Act ("APA") that deny him equal

and meaningful access to immigration proceedings and to programs, services, and activities while detained at OMDC.

Mr. Avirmed seeks a preliminary injunction directing Defendants to provide reasonable accommodations to which he is entitled pursuant to Section 504 of the Rehabilitation Act, and safeguards under *Matter of M.A.M.*, 25 I&N Dec. 474 (BIA 2011), *Franco-Gonzalez v. Holder,* 767 F. Supp. 2d 1034, 1037 (C.D. Cal. 2010) at all future proceedings before an immigration judge, which include any competency hearings, bond proceedings, master calendar hearings and individual hearings. Under those authorities, he specifically requests that he be provided with an MSL interpreter, written communication in Mongolian at every step of his immigration proceedings, and that his counsel and sister be allowed to assist him in these proceedings.

He also seeks enforcement of his right to effective communication while in detention in connection with his medical treatment and communication with his counsel and family. Finally, given Defendants' demonstrated unwillingness or inability to ensure effective communication with Mr. Avirmed, as is required under Section 504 and their own regulations, he seeks an order that Defendants demonstrate at a time certain that they have secured an MSL interpreter to ensure Mr. Avirmed has the opportunity to meaningfully participate in Defendants' programs, services, and activities, or that the Court set further hearing on whether he should be released from custody, without bond

or release conditions requiring an ankle monitor, until such time as proceedings under Section 240 can be completed.

## PRELIMINARY STATEMENT

Mr. Avirmed has established standing to sue because the injury from Defendants' failures to provide him with reasonable accommodations during his immigration proceedings creates an impassable barrier to his rights during these proceedings. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130 (1992) (finding that to establish standing to sue, a plaintiff must show: (1) an injury that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and defendant's challenged action; and (3) redressability). A preliminary injunction is required to protect against this "real and immediate threat of repeated injury" of being unable to communicate critical information and receive equal access to Defendants' programs, services, and activities in these proceedings, which is crucial to his ability to fully present his asylum case and to ensure his health and safety while detained. *O'Shea v. Littleton*, 414 U.S. 488, 496, 94 S.Ct. 669 (1974); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 107–08 (1983).

Mr. Avirmed also satisfies the requirements for a preliminary injunction. First, Mr. Avirmed will suffer immediate and irreparable harm if he is continually denied reasonable accommodations to be able to fully participate in his immigration proceedings. Due to Defendant Department of Justice's (which includes the Executive

Office for Immigration Review) ("DOJ-EOIR") inability to secure an MSL interpreter for his immigration proceedings, his case continues to be delayed, which therefore extends his time in detention, where he also continues to suffer due to Defendant Immigration and Customs Enforcement's ("ICE") failure to provide effective communication with an appropriate interpreter. Second, he has a substantial likelihood of prevailing on the merits of his Section 504 and APA claims. Third, any conceivable harm that Defendants may claim in his case is heavily outweighed by the ongoing and potentially irreversible harm to Mr. Avirmed. Finally, the public interest is served by the rigorous enforcement of the protections afforded to all disabled individuals under Section 504 and to enforcement of the APA. Preliminary injunctive relief is warranted and necessary to protect Mr. Avirmed from suffering further harms.

**STATEMENT OF FACTS**

Plaintiff has set forth facts in his prior briefing and evidence (*see* Dkt. ## 1-6, 12) and hereby incorporates them by reference.

Mr. Avirmed is a 49-year-old citizen of Mongolia. Amended Declaration of Bayalagmaa Avirmed ISO Ex Parte Application for Temporary Restraining Order and Preliminary Injunction ("Avirmed TRO Dec."), Dkt. 6, ¶3. Mr. Avirmed entered Defendants' custody on or around February 15, 2025. Declaration of Andrea Montavon-McKillip ISO TRO ("Montavon TRO Dec."), Dkt. 3-3, ¶10. Defendants have detained Mr. Avirmed at OMDC since late February. *Id.* ¶13.

**1. Despite Knowing that Mr. Avirmed is Deaf and Does Not Communicate Orally, Defendants Continually Fail to Reasonably Accommodate Him.**

Mr. Avirmed is Deaf and relies on MSL to communicate. Declaration of Andrea Montavon-McKillip ISO Preliminary Injunction ("Montavon PI Dec.") ¶5. He cannot communicate orally or read lips, and he does not understand spoken Mongolian. *Id.* Mr. Avirmed has only a basic understanding of written Mongolian, and he struggles to comprehend anything beyond simple words. He understands and expresses himself much more clearly in sign language. Declaration of Bayalagmaa Avirmed ISO PI ("Avirmed PI Dec.") ¶7. He suffered a brain injury in 2020 that continues to result in confusion and problems with his memory. Montavon PI Dec. ¶6.

Since his first encounter with Defendants' enforcement agents, Defendants have been on notice that Mr. Avirmed relies on MSL to communicate, is deaf and cannot hear or understand spoken Mongolian by reading lips, Avirmed TRO Dec., Dkt. 6, ¶¶14, 22-3, 25, 31, 33, 36, 40-2; Montavon PI Dec. ¶5, Exh. A. They were further put on notice by the filing of this lawsuit and the accompanying motions on May 22, 2025.

After Plaintiff filed his Complaint and request for temporary restraining order, Defendants issued Mr. Avirmed with a Notice to Appear ("NTA") before an immigration judge, placing him in Section 240 proceedings. Montavon PI Dec.*,* ¶12, Exh. C. The NTA's Certificate of Service notes that Mr. Avirmed was "provided oral notice in the Mongolian language" of his hearing. *Id.* However, Mr. Avirmed could not have heard it even if it had been provided. Avirmed PI Dec. ¶3.

On June 6, 2025, Mr. Avirmed appeared at a hearing before Immigration Judge Mark Sameit, to determine whether he could be released on bond pending the completion of the Section 240 proceedings.  He was represented by his Immigration Counsel, Ms. Montavon-McKillip. Montavon PI Dec. ¶13. Notwithstanding the expressed request for an MSL interpreter,  Defendants did not provide Mr. Avirmed with an MSL interpreter at this hearing. *Id*. ¶16. With no MSL interpretation, Mr. Avirmed was unable to understand anything at his hearing. *Id*. ¶19.

Immigration Judge Sameit stated that, prior to the hearing, the court had attempted to secure an MSL interpreter, but that no MSL interpreters were currently available in the system. *Id*. ¶17. Given the urgency, Ms. Montavon-McKillip asked Mr. Avirmed's sponsor and sister, Ms. Avirmed, who attended the hearing remotely, to interpret for him. *Id*. ¶18. However, Ms. Avirmed was unable to serve as an ad hoc MSL interpreter for him due to technical difficulties. *Id*. Immigration Counsel had to make the impossible choice to proceed with the hearing without her client's ability to participate or understand; choosing to wait for the availability of an MSL interpreter would result in prolonging her client's detention. *Id*. ¶19. Instead, Ms. Montavon-McKillip used Google Translate on her laptop during the hearing and afterward to convey to Mr. Avirmed what had happened during the proceedings. *Id*. ¶20. However, Google Translate between English and Mongolian is unreliable. *Id*. ¶21. Because Defendants failed to provide interpretation, Mr. Avirmed was denied meaningful access to his hearing.

On June 9, 2025, Mr. Avirmed again appeared in immigration court before Immigration Judge Eugene H. Robinson, for a Master Calendar hearing. *Id*. ¶¶ 21-22. Defendants again failed to provide an MSL interpreter at the June 9 hearing; Mr. Avirmed again was unable to understand any of the hearing. *Id*. ¶¶ 25-26. Defendants represented that Mr. Avirmed had received a mental health evaluation, with an MSL Interpreter. Avirmed PI Dec ¶17. Defendants' representations were not true. Mr. Avirmed's Immigration Counsel reviewed the evaluation and confirmed that no information about an MSL interpreter was noted on the document. *Id.* ¶35. Immigration Judge Robinson reaffirmed that no MSL interpreters were available within Defendants' system. *Id*. Immigration Judge Robinson asked Plaintiff's Immigration Counsel to share the contact information of the interpreters whom she has employed to communicate with Mr. Avirmed. *Id.* ¶38. Defendants have been offered the MSL interpreters' contact information many times before; yet have never followed up on that offer. *Id.* ¶40. At no time while in the custody of Defendants has Mr. Avirmed been provided with an MSL interpreter or written Mongolian translation of documents. Montavon PI Dec. ¶¶5, 12, 16, 18, 25, 30, 32-33, 42; Avirmed PI Dec. ¶17.

**2. Mr. Avirmed is Currently Being Denied Adequate Medical Care.**

By failing to provide Mr. Avirmed access to accurate MSL interpretation while at OMDC, Defendants and their agents have also denied him adequate medical care. Mr. Avirmed's 2020 head injury seriously damaged his skull, and he continues to experience

fainting spells, confusion, seizures, and problems with his memory. Avirmed Dec., Dkt. 6, ¶¶4, 13. In addition, Mr. Avirmed is currently experiencing severe back pain, kidney stone pain, and has diabetes. Montavon PI Dec. ¶50. Mr. Avirmed has indicated that he continues to experience pain from his 2020 head injury. *Id.*

Despite the need for urgent medical help, Mr. Avirmed has been unable to effectively communicate with medical staff at OMDC. *Id.* ¶33. ICE's records from Mr. Avirmed's medical care at OMDC demonstrate that they have never provided him with an MSL interpreter. *Id.*, Exh. C. Instead, ICE has provided Mr. Avirmed with an ASL interpreter, which he could not understand. *Id.* The denial of MSL interpretation in medical settings is especially harmful for Mr. Avirmed, as he originally lost his hearing in childhood after a doctor mistakenly overdosed him with medication for pneumonia. *Id.* ¶49. Without MSL interpretation, Mr. Avirmed worries that medical staff may again misdiagnose or mistreat his conditions. *Id.* ¶51.

Defendants' failure to provide accurate MSL interpretation in medical settings impedes their ability to assess how his 2020 head injury affects his competency. *Id.* ¶¶8-34. Despite statements by Office of the Principal Legal Advisor ("OPLA") counsel Lauren Bortolotti at the June 9 hearing that OMDC staff had assessed Mr. Avirmed for serious mental illness with the help of an MSL interpreter and found him competent to represent himself in immigration proceedings, Defendant's own medical records reveal that they failed to communicate with Mr. Avirmed using an MSL interpreter—only ever

providing him with interpretation and translation in ASL and spoken Mongolian, which are a language and a method of communication he cannot effectively use or understand. *Id*. ¶¶31-32.

### 3. Defendants' Failure to Accommodate Mr. Avirmed's Disabilities at OMDC Leaves Him Isolated and Effectively in Solitary Confinement.

Mr. Avirmed has been subjected to facility policies that place a one-hour limit on video calls. Montavon PI Dec. ¶10. When Mr. Avirmed has access to MSL interpretation, it takes up to twice as long to communicate as a hearing individual, who requires translation, might need because a MSL interpreter translates his statements into ASL, and then an ASL voice interpreter orally translates his statements into spoken English. *Id.* ¶7-11. And, when anyone who does not use MSL speaks to Mr. Avirmed, they need the same interpretation and translation in reverse. *Id*. Defendants' agents at OMDC have failed to accommodate for Mr. Avirmed's disabilities by failing to provide an exception to the one-hour-per-day limit on video calls as an accommodation for his hearing disability. *Id*. ¶10. This one-hour limit poses significant problems for Mr. Avirmed in communicating with counsel. *Id.* ¶59. Defendants exacerbate the problem by requiring that Mr. Avirmed and his immigration counsel schedule video calls a week in advance and accept whatever video call time OMDC staff dictates. *Id*. ¶8. The problem is magnified because Immigration Counsel's interpreter is in Mongolia, and the time zone difference complicates complying with OMDC's unilateral scheduling process. *Id.*

¶9. Together, these demands pose undue burdens on Mr. Avirmed that other detained individuals, who do not rely on this specialized language support, do not face. *Id.* ¶59.

Without MSL interpretation, Mr. Avirmed has also been unable to effectively communicate with OMDC staff and his fellow detained individuals since he arrived in late February. *Id.* ¶48. Because Defendants have denied Mr. Avirmed the MSL interpretation he needs to communicate, he cannot ask for help, ask questions, or receive answers in a way that he can understand. *Id.* ¶52. In the time that Ms. Montavon-McKillip has served as his immigration counsel, Mr. Avirmed's forced isolation has made him increasingly withdrawn, confused, and anxious. *Id.*

Defendants have shown that they are unable to accommodate Mr. Avirmed at OMDC due to his disabilities. Mr. Avirmed has a willing sponsor in his U.S. citizen sister, Ms. Bayalagmaa Avirmed, and her functional knowledge of MSL means that Mr. Avirmed would have access to a trusted interpreter to be able to communicate about his daily needs and medical care. Avirmed PI Dec. ¶¶4, 7. Finally, Ms. Avirmed is aware of and able to support her brother's ongoing functional limitations due to his 2020 head injury. Avirmed TRO Dec., Dkt. 6, ¶13.

## ARGUMENT

1. **Plaintiff Meets the Legal Standard for the Issuance of Preliminary Injunction.**

Under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act,[1] injunctive relief is authorized to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2). To obtain a preliminary injunction, a plaintiff must establish (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008). Courts evaluate these factors on a "sliding scale." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (quotation marks omitted). A "stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, where the balance of hardships "tips sharply towards the plaintiff," the plaintiff need only demonstrate "serious questions going to the merits." *Kaszuba v. Fidelity Nat'l Default Servs*., 2011 WL 601525, at *1 (S.D. Cal. Feb. 10, 2011) (Sabraw, J.).

Thus, a court may issue an injunction if the *Winter* factors regarding irreparable harm and public interest are met, and movants raise (1) "serious questions going to the

---

[1] Section 504 claims can be properly decided through a combined analysis of Title II ADA and Section 504 claims. *K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088,1098 (9th Cir. 2013). The court justifies doing so because "there is no significant difference in the analysis of rights and obligations created by the two Acts."

merits," and (2) the balance of equities "tips sharply towards the [movants]." *Id*. (quoting *Alliance, at* 1135). Plaintiff satisfies this standard.

Plaintiff first addresses irreparable harm and addresses the remaining factors below, in Section II, *supra*.

### 2. Plaintiff is Suffering and Will Continue to Suffer Irreparable Harm Absent a Preliminary Injunction.

Mr. Avirmed is suffering and will continue to suffer irreparable harm from Defendants' denial of his civil rights pursuant to Section 504 in at least three areas: his immigration proceedings; his attempts to receive care for regular and urgent medical needs; and the limits on his daily life activities while in detention at OMDC. Montavon PI Dec. ¶¶8-10, 12, 16-21, 25-27, 32-35, 42-44, 46-48, 50-51; Avirmed PI Dec. ¶¶8, 11, 14, 17. Defendants' continued violations of his basic rights, as reflected in Defendants' own documents, demonstrate the need for an order from this court.

Without the accurate MSL interpretation and written translation necessary for him to effectively communicate information related to his asylum case or related to his needs while detained, Mr. Avirmed has been deprived of his civil rights to have meaningful access to Defendants' programs or activities. Effective participation in these and future proceedings is critical as they will determine his eligibility to be released pending determination of his asylum application and are the exclusive method by which he is able to establish his right to asylum. 8 U.S.C. § 1158(a)(1). Mr. Avirmed has further

been denied an opportunity to demonstrate his competency, or the lack thereof, in light of his 2020 head injury. Avirmed PI Dec. ¶17. Defendants have also denied Mr. Avirmed access to adequate medical care while he is in custody and prohibited meaningful access to the programs and services related to all aspects of his daily life in detention, including "sleeping, eating, showering, toileting, communicating with those outside the [facility] by mail and telephone, exercising, entertainment, safety and security, the [facility's] administrative, disciplinary, and classification proceedings, medical, mental health and dental services, the library, educational, vocational, substance abuse and anger management classes and discharge services." *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 935–36 (N.D. Cal. 2015) (internal citations omitted). Despite notice of these denials and attempts at intervention by his counsel and sponsor, Defendants continue to violate his rights. *See, generally,* Avirmed TRO Dec., Dkt. 6, Avirmed PI Dec., Montavon PI Dec. By denying Mr. Avirmed MSL interpretation and other reasonable accommodations for his disabilities, he is unable to meaningfully participate in his own proceedings, and he is isolated and unable to communicate with OMDC staff and others at the facility.

Courts have long recognized that "[i]njuries to individual dignity and deprivations of civil rights constitute irreparable injury." *Cupolo v. Bay Area Rapid Transit*, 5 F.Supp.2d 1078, 1084 (N.D.Cal. 1997) (*citing Chalk v. United States Dist. Court*, 840 F.2d 701, 710 (9th Cir. 1988); *Sullivan v. Vallejo City Unified School Dist.*, 731 F. Supp.

947, 961 (E.D. Cal. 1990) (injury to ability to function as independent person constitutes irreparable injury). Courts have also found that irreparable harm is established where injunctive relief is required to preserve the health of a detained individual. *See Jones v. Texas Dep't of Criminal Justice,* 880 F.3d 756, 759 (5th Cir. 2018). Mr. Avirmed is currently and will continue to be irreparably harmed in the absence of injunctive relief.

Without an injunction requiring Defendants to respect and comply with Mr. Avirmed's rights pursuant to Section 504 and their own laws and regulations pursuant to the APA, Mr. Avirmed is subject to the ongoing irreparable harm to his mental and physical health, unlawful prolonging of his detention, and inability to meaningfully participate in his own immigration proceedings.

### 3. There Is a Substantial Likelihood That Plaintiff Will Prevail on The Merits of His 504 Claim.

Section 504 of the Rehabilitation Act prohibits discrimination on the basis of disability by executive agencies such as Defendants. 29 U.S.C. § 794(a)[2]. Mr. Avirmed can show: (1) he is an individual with disabilities; (2) he is otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of Defendants' services, programs or activities or was otherwise discriminated against by Defendants; and (4) such exclusion, denial of benefits, or discrimination was by reason of his

---

[2] *See also* 6 CFR 15.1 stating "the purpose of this part is to effectuate section 504 of the Rehabilitation Act…for all components of the Department [of Homeland Security]."

disabilities. "[T]he ADA and the RA do not merely protect disabled individuals from denial of benefits. They also prevent disabled individuals from being "excluded from participation in" or "subjected to discrimination under" any state program or activity and they prohibit "discrimination by" any public entity. *Armstrong v. Wilson*, 124 F.3d 1019, 1024 (9th Cir. 1997).

Section 504 imposes an "affirmative obligation" on federal agencies to ensure that individuals with disabilities have meaningful access to federal programs. *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017). In *Updike*, which also involved a hearing-impaired individual, the Ninth Circuit emphasized that the key question is whether the individual could "communicate as effectively as non-hearing-impaired individuals." *Id.* at 956. If not, the government is in violation of disability law simply by requiring the individual to proceed in a way that is not equal to the experiences of his peers who do not have a disability. *Id.* Mr. Avirmed's experiences at the hands of Defendants and the evidence documenting these experiences show that Defendants have violated disability law by continuing to require Mr. Avirmed to proceed in a way that is unequal and, therefore, unlawful. Montavon PI Dec., Exhs. C, D.

Defendants do not dispute that Mr. Avirmed is an individual with disabilities and qualified to participate in or receive the benefit of Defendants' services, programs, or activities. Montavon PI Dec. ¶33, Exh. D (containing Defendants' records that state that he is, *inter alia,* "Mongolian speaking," "deaf and mute and unable to communicate,"

requires use of "Goggle [sic] translate"; *see also* Exh C, requiring him to appear in immigration proceedings). Defendants have been on notice that Mr. Avirmed required MSL interpretation since his arrest, when he provided a letter describing his needs. Montavon PI Dec. ¶5, Exh, A.  Despite this knowledge Defendants have denied Mr. Avirmed interpretation during interviews, hearings, medical appointments and in his outside communication.

Because Mr. Avirmed is currently detained, Section 504 requires Defendants to identify, track, and then accommodate disability-related needs to comply with the rights that people with disabilities have for meaningful and equal access to Defendants' programs, services, and activities. *See Armstrong v. Brown*, 732 F.3d 955, 958-62 (9th Cir. 2013) (affirming order requiring Department of Corrections to ensure county facilities affirmatively track and accommodate the needs of people in detention with disabilities within 24 hours of intake); *see also Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001)).

Defendants' own regulations, promulgated pursuant to, and construing the obligations imposed by Section 504, provide "(1) The Department shall furnish appropriate auxiliary aids where necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a program or activity conducted by the Department... [and] In determining what type of auxiliary aid is

necessary, the Department shall give primary consideration to the requests of the individual with a disability." 6 C.F.R. § 15.60; *see also* 6 C.F.R. § 15.30 (prohibiting disability discrimination, generally). This is carried through in the Defendants' own policies which state that they must "engage in an individualized, interactive process with the detainee" when providing communication assistance to Deaf individuals, and will "accommodate a range of sign languages," not merely American Sign Language ("ASL"). U.S. Immigr. & Customs Enf't, ICE Disability Access Plan 8-9 (Aug. 19, 2020), https://www.ice.gov/doclib/about/offices/dcr/iceDisabilityAccessPlan.pdf. These requirements are consistent with Defendants' obligation to "consider [Mr. Avirmed's] needs" and provide "reasonable accommodation" in light of his disabilities. *See* 29 U.S.C. § 794; *Duvall* at 1139. But Defendants' own records evidence clear violations of Defendants' legal responsibilities to track and then accommodate his disabilities.

Defendant ICE demonstrated its failure to reasonably accommodate Mr. Avirmed's need for effective communication as a Deaf person when they served him the NTA, which falsely stated that he was "provided oral notice in the Mongolian language of the time and place of his . . . hearing and the consequences of failure to appear" -- an impossibility for a Deaf man. Montavon Dec., Exh. C. Additionally, Mr. Avirmed's medical records from OMDC show that, on February 24, 2025, Defendants attempted to communicate with Mr. Avirmed *via* "A[merican] S[ign] L[anguage] translator #110877 John." Montavon PI Dec. ¶33, Exh. D at 7. Mr. Avirmed does not understand ASL.

Avirmed PI Dec. ¶3. OMDC's medical staff falsely claimed that Mr. Avirmed "understood" how to manage his high blood pressure when that medical advice was supposedly relayed via this ASL interpreter. Montavon PI Dec. ¶33, Exh. D at 9. Defendants' records also show that, during at least three other medical visits —February 23, 2025; March 9, 2025; and March 12, 2025—OMDC medical staff failed to communicate with Mr. Avirmed, relying not on an MSL interpreter but on Google Translate. *Id.,* Exh. D at 4-6 & 10. Google Translate between English and Mongolian is unacceptable pursuant to the Performance Based National Detention Standards ("PBNDS").[3] The February 23 visit record contains a note that demonstrates the inadequacy of Google Translate: it states a phone number that supposedly belongs to Mr. Avirmed's "DAUGHTER," "VIRGINIA WASHINGTON." Montavon PI Dec. ¶33, Exh. D at 10. However, Mr. Avirmed does not have a daughter, nor does he know anyone named Virginia Washington. Mr. Avirmed was actually describing his younger sister, Ms. Avirmed, who lives in Northern Virginia, near Washington, D.C. Avirmed PI Dec., ¶4. Given the multiple layers of translation required for Mr. Avirmed to

---

[3] The PBNDS 2011 (revised 2016), the detention standards that apply to OMDC, specifically state that "[f]acilities *shall* provide appropriate interpretation and language services for L[imited] E[nglish] P[roficient] detainees related to medical and mental health care. Where appropriate staff interpretation is not available, facilities will make use of *professional interpretation services*." Section 4.3(E), Medical Care (emphasis added). While Google Translate can be a helpful tool for translation, it does not constitute a professional interpretation service. *See also* https://www.ice.gov/doclib/foia/odo-compliance-inspections/otayMesaDetCntrSanDiegoCA_Apr25-27_2023.pdf

understand, Google Translate is unacceptable. Defendants' continuous reliance on it, demonstrates how they have failed to allow Mr. Avirmed to have the access to medical care that a hearing person would otherwise have. *See Updike* at 956.

Finally, Defendants' records also show that, on March 1, 2025, Mr. Avirmed purportedly provided written "Consent to the Use of Sri Antidepressant medication." Montavon PI Dec. ¶33, Exh. D at 15. This consent form contains seven paragraphs of warnings, including about "a treatable but potentially fatal" side-effect, as well as the dangers of "an increased risk of suicide" from failing to treat depression. *Id*. Mr. Avirmed's signature purportedly certifies that he "read the above information, or had it explained in a language [he] understand[s], and hereby consent[ed] to treatment and ha[d] no additional questions." *Id*. There is no record of whether this information was presented to Mr. Avirmed via an MSL interpreter, or in accurately translated written Mongolian, such that he could ask questions about his medical treatment. *Id*. This consent form demonstrates the harm caused by Defendants' failure to provide effective communication: Mr. Avirmed cannot receive adequate medical care as the lack of proper interpretation denies Mr. Avirmed the opportunity to ask questions in MSL and meaningfully consent to medical treatment.

Defendants' consistent and ongoing failures directly contradict their representations to this Court that Mr. Avirmed's claims would be addressed by operation of the issuance of the NTA after filing the instant Complaint and Motion. Defendants'

continued failure to implement reasonable accommodations has effectively and completely denied Mr. Avirmed equal access to their programs, services, and activities; those denials are well evidenced by their own documents and actions. Mr. Avirmed is thus likely to prevail on the merits of his Section 504 claim. *See, e.g. Armstrong v. Brown*, at 958-62 (affirming order requiring DOC to ensure county facilities affirmatively track and accommodate the needs of people in detention with disabilities, including within 24 hours of intake).

### 4. There Is aSubstantial Likelihood That Plaintiff Will Prevail on The Merits of His APA Case.

The Administrative Procedure Act ("APA") applies to all executive agencies, including the Department of Homeland Security and its component agencies, and sets judicial review standards for final agency actions. 5 U.S.C. §§ 551(1), 701-706. The APA requires that agency actions be set aside when they are "short of statutory right" or "without observance of a procedure required by law." *Id.* § 706(2)(C), (D). Where the rights of individuals are affected, as Mr. Avirmed's here, the APA requires that agencies follow their own procedures. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974). *See also Church of Scientology of Cal. v. United States,* 920 F.2d 1481, 1487 (9th Cir.1990) (noting that "an administrative agency is required to adhere to its own internal operating procedures"); *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004). DHS regulations and internal policies expressly address disability accommodations.

Defendants violated the APA when it failed to provide reasonable

accommodations in accordance with Section 504 of the Rehabilitation Act, 6 C.F.R. § 15.30 and § 15.60 and the ICE Disability Plan. https://www.ice.gov/doclib/about/offices/dcr/iceDisabilityAccessPlan.pdf. Despite Mr. Avirmed and his Immigration Counsel affirmatively requesting specific reasonable accommodations for his disabilities, Defendants have repeatedly denied them and forced him to engage in multiple critical proceedings that have a profound impact on his future, including the fear screening process, a mental health evaluation, a jurisdictional hearing, and a Master Calendar hearing without the necessary accommodations to ensure his equal and meaningful access to these proceedings. Montavon PI Dec. ¶¶12, 16, 25, 32, 33. Defendants' ongoing failure to provide the reasonable accommodations of an MSL interpreter is "not in accordance" with the requirements Defendants provide reasonable accommodations specific to the needs of Mr. Avirmed, a qualified individual with a disability, such that he can meaningfully and equally access Defendants' programs and services. *See* 29 U.S.C. § 794(a); 6 C.F.R. §§ 15.30, 15.60; *see also Choate*, 469 U.S. at 300-01, 305; *Duvall* at 1139; *Updike*, 870 F.3d at 949. *See also* Montavon Dec. ¶¶2, 16, 25, 32, 33.

The Ninth Circuit has specifically held that an administrative agency, such as Defendant ICE, must adhere to its own internal operating procedures. *Church of Scientology of Cal.*, 920 F.2d at 1487, *Alcaraz,* at 1162. That Plaintiff has been denied the requested reasonable accommodations in violation of Defendant ICE's Disability

Plan violates the APA.

Defendants' actions and decisions are also arbitrary and capricious. They have failed to engage in reasoned decision-making, or provide a satisfactory explanation as to why, despite having an affirmative obligation to use their resources to find an MSL interpreter and being offered the contact information for one by Plaintiff's sister and Mr. Avirmed's Immigration Counsel, they failed to use an MSL interpreter with Plaintiff, ever. *Regents of the Univ. of Cal.*, 591 U.S. at 16; *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43; *Updike*, 870 F.3d at 949. *See also,* Montavon PI Dec. ¶40.

Defendants have only offered, in a footnote, that "that the immigration court is working diligently to locate an MSL interpreter." Dkt. 13, fn. 1.[4] Defendants' actions and decisions have failed to follow very clear procedures and ensure Plaintiff's statutory rights under the APA, and Plaintiff is likely to prevail on his APA claims.

**5.  The Balance of Hardships Weighs in Favor of Plaintiff and the Public Interest is Served Best through the Issuance of a Preliminary Injunction.**

The Court must "balance the competing claims of injury and consider the effect on each part of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks

---

[4] Notably, Defendants do not acknowledge that Mr. Avirmed has now been through multiple critical proceedings with no interpretation or translation, that they refused Mr. Avirmed's Immigration Counsel's presence in critical processes, and that he continues to suffer significant harm while in detention. Montavon PI Dec. ¶¶2, 16, 25, 32, 33, 42-51.

omitted). Courts have considered the nature of a Plaintiff in this calculus: "We also consider it crucial that, because the members of plaintiffs' class are largely infirm and disabled...[d]eprivation of benefits pending trial might cause economic hardship, suffering or even death." *Lopez v. Heckler* (1983) 713 F.2d 1432. The Ninth Circuit has also held that any monetary costs to government entities are outweighed by the interest in protecting individuals from physical harm. *Harris v. Bd. O Supervisors, L.A. Cnty.,* 366 F.3d 754, 766 (9th Cir. 2004). "Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required." *Lopez,* at 1437.

If Mr. Avirmed continues to be detained without equal access to his disability rights, he is at risk of irreparable harm to his physical and mental health and to unlawful extension of his detention with no access to interpretation, appropriate medical services, or other programs, services, and activities. Montavon PI Dec. ¶¶2, 16, 25, 32, 33, 42-51.

Defendants have raised no claims of harm, nor can they. A government agency "cannot suffer harm from an injunction that merely ends an unlawful practice . . ." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (citation omitted). Indeed, the relief Plaintiff requests is required by law. Consequently, the irreparable and significant harm to Plaintiff's stemming from Defendants' actions outweighs any harm that Defendant may sustain.

Additionally, a preliminary injunction enjoining Defendants' ongoing violations of Section 504 serves the public interest in the enforcement of federal disability law. "In enacting the ADA, Congress demonstrated its view that the public has an interest in ensuring the eradication of discrimination on the basis of disabilities." *Enyart v. National Conference of Bar Examiners*, 630 F. 3d 1153, 1167 (9th Cir. 2011). [5] Granting Plaintiff's preliminary injunctive relief request furthers the Section 504 anti-discrimination mandate and serves the public interest.

Plaintiff has also shown that Defendants failed to follow their own procedures and acted arbitrarily and capriciously; the "public interest is served by compliance with the APA." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018). Finally, "there is no harm to the Government when a court prevents the Government from engaging in unlawful practices." *Castillo v. Barr*, 449 F. Supp. 3d 915, 923 (C.D. Cal. 2020)

## CONCLUSION

Plaintiff seeks an order directing Defendants to stop forcing Plaintiff to participate in immigration proceedings without the reasonable accommodations he is entitled to under Section 504 and Defendants' own policies. To ensure compliance, Plaintiff seeks an articulation of the specific accommodations that he is entitled to under Section 504 and those policies, *viz.*, a Mongolian Sign Language interpreter at all immigration proceedings; written communication in Mongolian, the presence of his counsel and his

---

[5] *See K.M. ex rel. Bright* at 1098 (holding that there is "no significant difference in the analysis of rights and obligations created by the two Acts").

sister for assistance; conducting anew those proceedings that he has had to participate in without those accommodations; to not rely upon the mental health evaluation conducted without the assistance of appropriate interpretation and to ensure that a new evaluation is conducted with the assistance of an MSL and Mongolian translation of written materials; to stop allowing medical evaluation and services be provided without the assistance of an MSL and written communication in Mongolian, and ensuring that such accommodations are available to him so that he is not denied that care; and to stop denying him access to his counsel and family by imposing limits on the time and duration of his video calls. Because of Defendants' demonstrated failure to comply with its obligations, even while Plaintiff's motion was pending, Plaintiff also requests that they be required to return to this court at a date certain to demonstrate compliance. If they fail to do so, Plaintiff asks the court to then determine whether release is appropriate as a reasonable accommodation.

Dated: June 23, 2025             Disability Law United

                                 By:    /s/ Cynthia L. Rice
                                        Attorneys for the Plaintiff

                                 Disability Rights Legal Center

                                 By:    /s/ Alegría De La Cruz
                                        Attorneys for the Plaintiff