| | |
|---|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYARTULGA AVIRMED, | Case No.: 25-cv-1310-DMS-DEB |
| Plaintiff, | |
| v. | **ORDER CONFIRMING GRANT OF MOTION FOR PRELIMINARY INJUNCTION** |
| U.S. DEPARTMENT OF HOMELAND SECURITY (DHS); KRISTI NOEM, in her official capacity as Secretary of the DHS; U.S. CITIZENSHIP AND IMMIGRATION SERVICES (USCIS); KIKA SCOTT, in her official capacity as Senior Official Performing the Duties of the Director of USCIS; CUSTOMS AND BORDER PROTECTION (CBP); PETE R. FLORES, in his official capacity as Acting Commissioner of CBP; IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE); TODD LYONS, in his official capacity as Acting Director of ICE; U.S. DEPARTMENT OF JUSTICE (DOJ); and PAMELA BONDI, in her official capacity as Attorney General, | |
| Defendants. | |

Plaintiff, who is deaf and non-verbal, brings a motion for preliminary injunction against Defendants to postpone proceedings in immigration court pending reasonable accommodations for his disabilities under Section 504 of the Rehabilitation Act. (Motion, ECF No. 16-1). The matter came on for hearing on July 9, 2025. Alegría Guadalupe De La Cruz and Sylvia Torres-Guillén appeared for Plaintiff and Lisa Hemann and Erin Dimbleby appeared for Defendants. After hearing from counsel, the Court granted in part and denied in part Plaintiff's Motion and entered a minute order vacating impending proceedings before the immigration court and providing certain accommodations to Plaintiff. For the following reasons, the Court confirms its ruling.

## I.   BACKGROUND

Plaintiff Bayartulga Avirmed is a 48-year-old deaf and non-verbal citizen of Mongolia who is presently detained at the Otay Mesa Detention Center ("OMDC"). (TRO, at 23–24). In 2020, Plaintiff was beaten by a group of men in his neighborhood in Mongolia "because he did not turn around when they called his name and they considered it disrespectful." (Avirmed Decl., ECF No. 6 ¶ 4). Between 2020 and 2024, the attackers repeatedly demanded money from Plaintiff and threatened additional violence if he refused to pay. (*Id.* ¶ 6). Plaintiff attempted to report the attackers to the local authorities, but Mongolian police declined to investigate because they "d[id] not have a way to communicate with Plaintiff." (*Id.* ¶ 5). Plaintiff then fled Mongolia and sought asylum within the United States due to the constant threats he received from his attackers and the lack of recourse from local law enforcement officials. (Complaint, ECF No. 1 ¶ 2). From the beatings, Plaintiff "suffered traumatic brain injury that adversely affected his memory, his vision, and left him with fainting spells, confusion, and seizures." (*Id.*).

Plaintiff crossed into the United States between ports of entry on the Southern border on or about February 15, 2025 and was soon after arrested by U.S. Customs & Border Protection ("CBP") agents. (TRO at 24). Plaintiff only communicates through Mongolian Sign Language ("MSL") and written Mongolian. (*Id.* at 23). Upon arrest by CBP, Plaintiff attempted to give CBP a letter translated from Mongolian to English expressing his fear of

return to Mongolia and his intent to apply for asylum. (*Id.* at 24). CBP agents refused to accept or read the letter and transferred Plaintiff to Immigration & Customs Enforcement ("ICE") custody at OMDC without ever providing him an MSL interpreter. (*Id.*). Upon arrival at OMDC, Plaintiff attempted to give ICE agents the translated letter but was again rebuked. (*Id.* at 25).

On or about March 5, 2025, an immigration official attempted to conduct an asylum interview with Plaintiff without an interpreter. (*Id.*). Plaintiff was able to provide the interviewer the letter, on which the official wrote the words "USA" and "Mongolia." (*Id.*). Plaintiff then attempted to communicate through body language that he feared returning to Mongolia. (*Id.*).

Sometime in early April 2025, Plaintiff was assigned pro bono counsel for his immigration proceedings through the County of San Diego's Immigrant Rights Legal Defense Program. (Complaint ¶ 5). Plaintiff's counsel and his U.S.-citizen sister, Bayalagmaa Avirmed, repeatedly informed ICE and the Asylum Office of U.S. Citizenship & Immigration Services ("USCIS") about Plaintiff's disability and his need for an MSL interpreter. (TRO, at 25). Plaintiff's counsel also requested that she be allowed to represent Plaintiff during his credible fear interview but was instead told that Plaintiff had not been referred to USCIS for such an interview by ICE or CBP. (*Id.*).

On April 17, 2025, Plaintiff's counsel reached out to the Mental Health Team of the Office of the Principal Legal Advisor ("OPLA") for San Diego. (*Id.* at 26). Plaintiff's counsel suggested to OPLA that Plaintiff's disability entitled him to protections pursuant to the *Franco-Gonzalez* settlement,[1] the Immigration & Nationality Act ("INA") and Section 504 of the Rehabilitation Act ("Section 504"). (*Id.*). Counsel also requested that OPLA issue Plaintiff a Notice to Appear ("NTA"), so that Plaintiff would be placed in

---

[1] *See Franco-Gonzalez v. Holder*, No. 10-cv-02211, 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013). Plaintiff's counsel contends that "Plaintiff, as a disabled individual with serious mental disorder or defect rendering him incompetent to represent himself, is entitled to representation at all immigration proceedings." (Complaint, ECF No. 1 ¶ 8.).

removal proceedings and begin the asylum review process in immigration court. (*Id.*). OPLA then informed counsel that her NTA request should be directed to ICE and that the office would "reach out to OMDC Medical to inquire [if] a Qualified Mental Health Provider has [been] found that meets the SMI criteria." (*Id.*). Counsel placed its request for a discretionary NTA and safeguards and accommodations to ICE on April 28, 2025. (*Id.*). Counsel also formally filed a motion for custody redetermination with the Otay Mesa Immigration Court and requested accommodations for Plaintiff pursuant to the *Franco-Gonzalez* settlement, *Matter of M.A.M.*,[2] and Section 504. (*Id.*); (Complaint ¶ 58).

On May 6, 2025, Plaintiff was again interviewed by an immigration official, this time with the assistance of a sign language interpreter. (TRO, at 26–27). Because the interpreter did not use MSL, neither Plaintiff nor the interpreter could understand each other. (*Id.* at 27). Following this interview, Plaintiff was served a "Convention Against Torture Assessment Notice" which stated that Plaintiff "did not establish it is more likely than not that [Plaintiff] will be tortured in Mongolia." (*Id.*). This notice was not written in Mongolian nor was it translated to him in MSL. (*Id.*). Based on this interview and notice, Counsel filed a stay of removal with ICE on May 12, 2025. (*Id.*). The stay was not granted. (*Id.*).

On May 15, 2025, immigration officials visited Plaintiff in his cell to attempt another interview—this time with an American Sign Language ("ASL") interpreter. (*Id.*). Plaintiff's cellmates reminded the officials that Plaintiff did not understand ASL. (*Id.*). Acknowledging this fact, the officials called Ms. Avirmed and asked her to serve as an MSL interpreter. (*Id.*). Ms. Avirmed declined and explained to the officials that she was not sufficiently proficient in MSL to serve as an interpreter. (*Id.*). Ms. Avirmed then provided the contact information for an MSL interpreter to the officials, but they did not heed her advice.

---

[2] 25 I&N Dec. 474 (BIA 2011).

On May 22, 2025, Plaintiff filed his Complaint and motion for temporary restraining order (TRO) seeking reasonable accommodations for his disabilities and stay of removal pending further court order. On May 27, 2025, after Plaintiff challenged the expedited removal proceedings, Defendants issued Plaintiff an NTA to appear before an immigration judge on June 9, 2025. (TRO Opp'n, ECF No. 7, at 4). The issuance of the NTA terminated Plaintiff's expedited removal proceedings and commenced removal proceedings under Section 240 of the INA ("240 proceedings"), where Plaintiff enjoys a statutory right to counsel, among other provisions.

Plaintiff was scheduled to appear before an immigration judge on July 14, 2025 for a competency hearing. On approximately June 6, 2025, Defendants conducted a mental health evaluation of Plaintiff in anticipation of the competency hearing. (B. Avirmed Decl., ECF No. 16-7 ¶ 18). Plaintiff moved to postpone that hearing pending accommodations he claims entitlement to as a disabled person.

Since Plaintiff entered immigration detention, he has been subject to several immigration interviews without the assistance of an MSL interpreter or other accommodations. (TRO Opp'n, at 3–4). Plaintiff also had access to counsel only at his 240 immigration hearings and not during expedited removal proceedings. (*Id.*). Plaintiff moves the Court to order Defendants to (1) provide all reasonable accommodations afforded to him under Section 504 at all future immigration proceedings; (2) strike from his A-file determinations made during Plaintiff's expedited removal proceedings without the presence of an MSL interpreter; (3) strike his prior mental evaluations conducted without the presence of an MSL interpreter; (4) conduct new mental evaluations and other 240 proceedings with accommodations; (5) continue the July 14, 2025 competency hearing until requests (1) and (4) are provided; (6) expand the time limit at OMDC to three hours for Plaintiff's video calls, which include but are not limited to Plaintiff, his immigration counsel, an MSL interpreter, and his sister; (7) allow for Plaintiff's sister to be present at the 240 proceedings; and (8) translate all written immigration court orders into written Mongolian. (Motion, at 30–31).

## II.      JURISDICTION

Defendants first argue Plaintiff lacks Article III standing to bring his Section 504 claim and his claims are moot. To have Article III standing, Plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendants contend Plaintiff lacks Article III standing because he was taken out of expedited removal proceedings after Plaintiff filed his Complaint and motion for TRO, and therefore his alleged injuries are moot as they relate only to Defendants' failure to provide reasonable accommodations during those proceedings.[3] (Opp'n, ECF No. 17, at 5–6). However, a voluntary "cessation of [alleged] activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosemere Neighborhood Ass'n. v. U.S. E.P.A*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). And while placement into 240 proceedings will afford Plaintiff counsel and interpreter services, it is undisputed Plaintiff was not provided interpreter services during prior 240 proceedings, including his bond and initial master calendar hearings, as well as his mental health examination. (Montavon Decl., ECF No. 16-2 ¶¶ 16, 25, 31–33). Plaintiff has therefore alleged injuries in fact caused by Defendants' failure to provide reasonable accommodations during his 240 proceedings, and injuries that are redressable with appropriate injunctive relief. Accordingly, the Court finds Plaintiff has sufficiently alleged Article III standing and his claims are not moot.

Defendants next argue the Court lacks jurisdiction because Plaintiff's requested injunctive relief is based on claims not pled in his Complaint. (*Id.* at 7–8). Plaintiff argues

---

[3] Defendants also represent they will not remove Plaintiff pending review of any final order of removal.

this Court retains jurisdiction because he requests reasonable accommodations throughout the immigration proceedings, which he has adequately alleged in his Complaint. (Reply, ECF No. 19, at 7). The Court agrees.

For this Court to grant injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015) (quoting *De Beers Consol. Mines*, 325 U.S. 212, 220 (1945)) (stating "[t]his requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself.") Plaintiff's Complaint broadly alleges violations of his Section 504 rights throughout the "immigration processes," and seeks reasonable accommodations during "his asylum request" and "stay of removal" pending such accommodations and review of any final order issued by immigration officials. (Complaint ¶¶ 1, 6, 9, 12, 45, 62-63). Plaintiff has pled a sufficient nexus between the claims advanced in his Complaint and the relief requested. The Court has jurisdiction and will proceed with Plaintiff's request for preliminary injunction.[4]

### III.   LEGAL STANDARD

#### A. Preliminary Injunction

"A party seeking a preliminary injunction must meet one of two variants of the same standard." *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th Cir. 2017). Under the *Winter* standard, a party is entitled to a preliminary injunction if it demonstrates (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Under the

---

[4] At oral argument, Defendants also referenced jurisdictional arguments under 8 U.S.C. §§ 1252(a)(5) (addressing judicial review "of an order of removal"), (b)(9) (similar). Notably, these arguments were not raised in Defendants' opposition, likely because they do not apply. The Court is addressing Plaintiff's requests for accommodations under Section 504 during immigration proceedings, for which there is jurisdiction, not an order of removal.

Ninth Circuit's "'serious questions' test—a 'sliding scale' variant of the *Winter* test— . . . a party is entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217). Under this "serious questions" test, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal quotations omitted)). A plaintiff need only demonstrate success as to at least one of their claims to receive a preliminary injunction. *See Ozkay v. Equity Wave Lending, Inc.*, No. 20-cv-08263-JST, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

Injunctive relief can be prohibitory or mandatory. "A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988)). "A mandatory injunction orders a responsible party to take action[,] . . . goes well beyond simply maintaining the status quo [p]endente lite[,] [and] is particularly disfavored." *Id.* at 879 (internal quotations omitted). "The status quo means 'the last, uncontested status which preceded the pending controversy.'" *N.D. ex rel. Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879). Here, Plaintiff's request is prohibitory because he seeks to preserve the status quo preceding this litigation: a scenario where Plaintiff receives the reasonable accommodations Defendants should have provided under Section 504 during his immigration proceedings.

A district court may also consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for preliminary injunction]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting a preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

## IV.   DISCUSSION

### A. Likelihood of Success on the Merits

"The first factor under Winter is the most important—likely success on the merits." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015). While Plaintiff carries the burden of demonstrating likelihood of success, he is not required to prove his case in full at the preliminary injunction stage but only such portions that enable him to obtain the injunctive relief he seeks. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

#### 1. Section 504 of the Rehabilitation Act

Plaintiff claims he has been denied the reasonable accommodations afforded to him pursuant to Section 504 of the Rehabilitation Act throughout his 240 hearings and related proceedings. Under that statute, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To succeed on a Section 504 discrimination claim, Plaintiff must show that (1) "[he] is a qualified individual with a disability; (2) [he] was denied a reasonable accommodation that he needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance" or is conducted by an executive agency.

*Csutoras v. Paradise High School*, 12 F.4th 960, 968–69 (9th Cir. 2021) (quoting *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016)) (cleaned up); *see also* 29 U.S.C. § 794(a). "Discrimination solely by reason of disability occurs when a program 'effectively denies otherwise qualified handicapped individuals the meaningful access to which they are entitled.'" *Ibarra v. Colvin*, No. 23-CV-01037-SI, 2024 WL 5505739, at *2 (N.D. Cal. Dec. 30, 2024) (quoting *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

The first and third elements of Plaintiff's Section 504 claim are not seriously disputed. Plaintiff, as a deaf and non-verbal individual who is also subject to fainting spells, confusion, and seizures, is a qualified individual with a disability under the statute. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1136 (9th Cir. 2001) (citing 42 U.S.C. § 12131);[5] 29 U.S.C. § 705. Defendants include executive agencies, here the Department of Justice and ICE, that are covered by Section 504 because of their responsibility over conducting 240 immigration hearings and related proceedings or overseeing conditions of immigration detention. *See* 29 U.S.C. § 794(a). Accordingly, Plaintiff is entitled to reasonable accommodations. At issue are the kinds of accommodations Defendants must provide under Section 504 and whether Defendants' proposed accommodations are sufficient.

Defendants propose a relay interpreter team consisting of a Certified Deaf Interpreter ("CDI") and an American Sign Language Interpreter ("ASI") to satisfy its obligation to provide reasonable accommodations for Plaintiff at *future* 240 proceedings. (Opp'n, at 3–4). This solution, according to Defendants, moots his prior Section 504 injuries because there would be no "real and immediate threat of repeated injury." (*Id.* at 9).

---

[5] Because "[t]here is no significant difference in analysis of the rights and obligations created by the [Americans with Disabilities Act] and the Rehabilitation Act[,] . . . courts have applied the same analysis to claims brought under both statutes." *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

This proposal is certain to preclude Plaintiff from understanding any part of his 240 proceedings. The relay is an interpretation *cul-de-sac*: Plaintiff first mouths or signs in MSL to the CDI, then the CDI attempts to interpret Plaintiff and conveys that interpretation to the ASI, and then the ASI communicates his or her understanding of the CDI's interpretation to the immigration judge. When asked at oral argument how Plaintiff would understand what was said through this relay, Defendants' counsel explained that the CDI—who is not trained in MSL—would ultimately "make gestures" at Plaintiff. Such attempts are insufficient as the relay leaves out Plaintiff. The record is replete with evidence and examples showing Plaintiff only understands MSL and written Mongolian. (ECF No. 19-4 ¶ 3); (B. Avirmed Decl. ¶ 7); (Reply, at 9 (collecting examples)). Defendants' solution is untenable because it deprives Plaintiff of meaningful access to and involvement in the proceedings. At minimum, Section 504 requires Defendants to provide Plaintiff with an MSL interpreter at all future 240 proceedings. Plaintiff has therefore demonstrated likely success on his request to have an MSL interpreter at immigration proceedings.[6]

Plaintiff additionally requests a "redo" of certain past proceedings—Plaintiff's medical evaluations, bond hearing, and master calendar hearing—which were conducted without the presence of an MSL interpreter. The medical evaluations must be redone as they are critical proceedings necessitating Plaintiff's engagement with health care providers. The evaluations are the foundation for an immigration judge's determination of competency and whether Plaintiff is entitled to additional protections under the law; yet, they were conducted without the assistance of an MSL interpreter. (ECF 16-2 ¶¶ 53–55); (B. Avirmed Decl. ¶¶ 16–18). The Court fails to see how Plaintiff could have meaningfully participated in any medical examination designed to evaluate competency when he and the evaluating doctor were unable to communicate. On the other hand, Plaintiff's bond and

---

[6] Because Plaintiff need only demonstrate success as to one of his claims to receive injunctive relief, *Ozkay*, 2020 WL 12764953, at *2, the Court declines to consider whether Plaintiff has met his burden as to his APA claims.

master calendar hearings were indisputably procedural in nature, did not affect the substance of his pending asylum case or other substantive rights, did not require his active participation, and were explained to Plaintiff by his counsel and sister after the fact without apparent consequence to his pending case. Accordingly, as to the medical evaluation, Plaintiff has shown likely success that Defendants violated his Section 504 rights when they proceeded without an MSL interpreter. The medical evaluations must be redone.

As clarified at oral argument, Plaintiff further requests the striking of medical records and other evaluative records from his A-file which were created during the expedited removal process—such as Plaintiff's credible fear interview and subsequent negative determination. Like the medical evaluation and records, the expedited removal proceedings and records were created without effective interpretation or translation services. Thus, Plaintiff was unable to meaningfully participate in these interviews and evaluations. Because these records may be considered by an immigration judge and adversely affect Plaintiff's asylum claim and potential protections under the *Franco-Gonzalez* class and *Matter of M.A.M.*, these records are stricken from Plaintiff's A-file.

Plaintiff also requests that the one-hour time limit for video calls in the detention facility with counsel and his sister be extended to three hours. At oral argument, Defendants disclaimed knowledge of any such policy, which is apparently set by OMDC. To the extent such a policy exists, Defendants will depart from that policy and allow up to three-hours per call. These calls will involve an MSL interpreter and, at times, may include a second Mongolian-to-English interpreter. (Montavon Decl. ¶ 10). Defendants agree that this labored-relay process involving numerous people (though necessary), will take significantly more time than a standard attorney-client call involving same-language communication without disabilities. Accordingly, Plaintiff has demonstrated that providing up to three-hours per video call is a reasonable accommodation under Section 504.

Next, Plaintiff requests the presence not only of counsel but also his sister at future immigration proceedings. The evidence establishes that Plaintiff's sister can sign

"comfortabl[y]" in MSL and communicate with Plaintiff, (B. Avirmed Decl. ¶ 7),[7] and Plaintiff is willing to share his fears and concerns through his sister to immigration officials. (Montavon Decl. ¶ 51); (B. Avirmed Decl. ¶ 8). This comfort is borne out of their lifelong familial bond and decades of support from his sister through challenging times in Mongolia and here. (Supplemental B. Avirmed Decl., ECF No. 19-3 ¶ 8). Considering Plaintiff's alleged cognitive disabilities, which leave him "confused, anxious, and increasingly withdrawn," (Montavon Decl. ¶ 52), Plaintiff has shown that his sister's presence will help him fully participate in immigration hearings and related proceedings. Accordingly, the Court finds Plaintiff has met his burden of showing that his sister's presence is a reasonable accommodation under Section 504.

Finally, and as clarified at oral argument, Plaintiff requests that all written orders of the immigration judge be translated into written Mongolian. Due to the Court's grant of Plaintiff's requests to permit his sister's presence at all immigration hearings and related proceedings, as well as extended video conference time limits at OMDC, this request appears superfluous and is not granted.

### B. Likelihood of Irreparable Harm

Under the second *Winter* factor, the Court considers whether Plaintiff is "likely to suffer irreparable harm in the absence of preliminary relief." 555 U.S. at 20. Plaintiff's inability to meaningfully participate in immigration proceedings is unquestionably a significant depravation of his right to access a daunting process that carries lifelong consequences. *See Torres v. U.S. D.H.S.*, No. EDCV 18-2604 JGB (SHKx), 2020 WL 3124216, at *8 (C.D. Cal. Apr. 11, 2020). Such injury constitutes irreparable harm. *See Cupolo v. Bay Area Rapid Transit*, 5 F. Supp. 2d 1078, 1084 (N.D. Cal. 1997) ("Injuries to individual dignity and deprivations of civil rights constitute irreparable injury.");

---

[7] In situations where only a MSL to oral Mongolian interpreter is available, Plaintiff's sister may finish the relay and translate from oral Mongolian to English. (Supplemental B. Avirmed Decl., ECF No. 19-3 ¶ 2, 5–6).

*Sullivan v. Vallejo City Unified Sch. Dist.*, 731 F. Supp. 947, 961 (E.D. Cal. 1990) (holding injury to ability to function as independent person constituted irreparable injury). Therefore, the second *Winter* factor favors Plaintiff.

### C. Balance of Equities and Public Interest

When the Government is a party to a case, the third and fourth *Winter* factors—the balance of the equities and the public interest—merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Plaintiff's suit is premised on the violation of his statutory rights guaranteed by Section 504. The accommodations Plaintiff seeks go to the heart of his ability to understand and participate in his 240 proceedings. It would not be "'in the public's interest to allow the [Government] . . . to violate the requirements of federal law, especially when there are no adequate remedies available.'" *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Further, "[the] public interest is served by requiring entities to take steps to 'assure equality of opportunity' for people with disabilities." *Enyart v. Nat'l Conf. of Bar Exam'rs*, 630 F.3d 1153, 1167 (9th Cir. 2011) (quoting 42 U.S.C. § 12101(a)(8)). Accordingly, the third and fourth factors support preliminary relief. A preliminary injunction is warranted under the circumstances.

### V. CONCLUSION

For these reasons, the Court **CONFIRMS** its **GRANT** in part and denial in part of Plaintiff's motion for preliminary injunction. Defendants shall (1) provide a certified MSL interpreter at all Plaintiff's future immigration hearings and proceedings;[8] (2) redo Plaintiff's medical and mental evaluations with the assistance of certified MSL interpretation; (3) reschedule Plaintiff's competency hearing (originally set July 14, 2025) pending MSL interpretation services and renewed medical and mental evaluations; (4)

---

[8] If a relay is needed from MSL to oral Mongolian to English, Defendants shall provide any additional interpreters needed to complete this relay.

strike Plaintiff's prior medical records and evaluations under the expedited removal process from Plaintiff's A-file and purge them from consideration at Plaintiff's future immigration hearings; (5) provide up to three hours per video conference call while in federal detention; (6) permit Plaintiff's sister, Bayalagmaa Avirmed, to attend Plaintiff's future immigration hearings and related proceedings (virtual video attendance shall be permitted where Ms. Avirmed may have her camera on and screen visible to Plaintiff so that they may communicate through MSL), and (7) not remove Plaintiff pending review of any final removal order.[9]  Plaintiff's counsel is invited to file updates with the Court should additional concerns arise.

**IT IS SO ORDERED.**

Dated:  July 16, 2025

Hon. Dana M. Sabraw
United States District Judge

---

[9] Plaintiff's motion for temporary restraining order shall be dismissed as moot.